**FILED**

**December 20, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time 2:27 PM**





# TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT CHATTANOOGA

| | |
|---|---|
| **CEASAR GAMBLE,** ) | **Docket No.: 2016-01-0471** |
| **Employee,** ) | |
| **v.** ) | |
| **MILLER INDUSTRIES,** ) | **State File No.: 70707-2015** |
| **Employer,** ) | |
| **And** ) | |
| **LIBERTY MUTUAL INS. CO.,** ) | **Judge Thomas Wyatt** |
| **Carrier.** ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS
## (DECISION ON THE RECORD)

This matter came before the undersigned Workers' Compensation Judge upon a Request for Expedited Hearing for a Decision on the Record, which Ceasar Gamble filed November 10, 2016, pursuant to Tennessee Code Annotated section 50-6-239(d)(2) (2016) and Tennessee Compilation Rules & Regulations 0800-02-21-.14(1)(c) (2016). Miller Industries filed responses on November 16, 2016, and December 15, 2016. The Court issued a Docketing Notice on December 6, 2016, listing the documents it would consider in making its decision. The Court gave Mr. Gamble and Miller Industries until December 15, 2016, to file objections and/or position statements.

The Court finds it needs no additional information to determine whether Mr. Gamble is likely to prevail at a hearing on the merits of the claim. Accordingly, pursuant to Rule 7.02 of the Practices and Procedures of the Court of Workers' Compensation Claims, the Court decides this matter upon a review of the written materials without an evidentiary hearing.

The central issue is whether Mr. Gamble is likely to prevail at a hearing on the merits in establishing his alleged injuries arose primarily out of and in the course and scope of employment. For the following reasons, the Court holds Mr. Gamble is entitled

1

to the medical benefits he seeks.[1]

## History of Claim

Mr. Gamble is a sixty-year-old resident of Chattanooga, Hamilton County, Tennessee, employed as a production assembler at Miller Industries' tow-truck assembly plant. (T.R. 1 at 1-2; Ex. 10.) On August 14, 2015, he injured his left hip and lumbar spine when he fell onto the floor when a stool with wheels rolled out from under him as he attempted to sit on the stool to perform his work duties. *Id.* Miller Industries initially accepted the claim as compensable, but later denied the claim based on the authorized treating physician's responses to written causation inquiries. (Ex. 12.)

Mr. Gamble immediately reported the injury to management at Miller Industries. (Ex. 2.) He received emergent care later that same day. (Ex. 5 at 1.) On August 24, Miller Industries arranged treatment for Mr. Gamble at a walk-in clinic, where the treating physician noted Mr. Gamble reported "left side pain" of an intensity of 10 on a scale of 10 related to an incident ten days earlier when he fell from a chair at work. (Ex. 6 at 1.)

Mr. Gamble also received authorized care by Dr. Daniel Callen at Nova Medical Center on August 24.[2] (Ex. 7 at 8A.) In a January 26, 2016 note, Dr. Callen stated that Mr. Gamble reported his injury occurred at work when he fell onto his left hip after a chair rolled out from under him. *Id.* Dr. Callen reviewed an MRI of Mr. Gamble's left hip and noted the it showed,

> [a]dvanced left hip arthropathy with marked cartilage loss, femoral head subluxation, subchondral cysts, mixed reactive acetabular bone changes, marginal osteophytes, moderate left hip effusion *with 10mm probable cartilaginous loose body in the anterior recess,* [and] diffuse labral degeneration without discrete tear[.]

*Id.* at 8B. (Emphasis added.) Dr. Callen also diagnosed Mr. Gamble with lumbar disc displacement and referred him for orthopedic care. *Id.*

Mr. Gamble saw Dr. Alexander Roberts for an evaluation of his lumbar spine. (Ex. 8 at 3.) He diagnosed Mr. Gamble with multi-level degenerative changes in his

---

[1] A complete listing of the technical record and the exhibits admitted into evidence is attached as an appendix to this Order.

[2] The parties did not submit all records from Nova Medical. The submitted records include Work Status/Restrictions forms indicating Dr. Callen saw Mr. Gamble on August 24, October 19, October 26, November 19, November 23, December 14, December 28, January 12 and January 26. (Ex. 7 at 1-8, 9.) However, the parties submitted the office notes for only the January 26 visit. *Id.* at 8A-8B. The Nova Medical records also indicate Mr. Gamble underwent nine sessions of physical therapy. *Id.* at 10-11.

2

spine and opined Mr. Gamble may have aggravated arthritis in his facet joints when he fell at work. *Id.* at 4. However, Dr. Roberts assessed that most of Mr. Gamble's pain was coming from his left hip injury and recommended consultation with a hip surgeon for treatment options. *Id.*

Miller Industries authorized Mr. Gamble to see orthopedic surgeon Dr. Matthew Bernard for his left hip. (Ex. 9 at 1.) Dr. Bernard's May 24 initial treatment note recorded that Mr. Gamble gave him a history of having suffered from extensive left hip pain for approximately six months. *Id.* Dr. Bernard recorded that Mr. Gamble had undergone right hip replacement surgery in 2012, and following the surgery and up until he fell at work, "he had been able to ambulate, he had been able to work." *Id.* He also noted that Mr. Gamble told him that, since he fell at work, the pain in his left hip had been unmanageable despite undergoing physical therapy and an injection. *Id.*

Dr. Bernard indicated that radiological testing of Mr. Gamble's left hip showed, "advanced arthropathy, but it also showed the 10mm probable cartilaginous loose body in the anterior joint process. *I believe that this represents [a] fractured osteophyte from his fall, based on our comparative films available on our system." Id.* (Emphasis added).

Dr. Bernard surmised from the history given him that Mr. Gamble was "managing" the preexisting arthritis in his left hip until he fell at Miller Industries. (Ex. 9 at 1.) However, after continuing to work at Miller Industries for six months after the fall, Dr. Bernard noted that Mr. Gamble "is no longer able to ambulate to perform his duties, secondary to hip pain and catching from loose bodies." *Id.* at 3. In terms of treatment options, Dr. Bernard considered both an arthroscopic procedure to remove the loose body in Mr. Gamble's left hip or hip replacement surgery, recommending the hip replacement surgery "to take care of his entire problem and get him back to a functional manual labor type job." *Id.*

The submitted records from Dr. Bernard contain his correspondence to a representative of Miller Industries' carrier, who asked Dr. Bernard to consider whether Mr. Gamble's fall at work accounted for greater than fifty percent of the causative impact of his left hip condition. In response, Dr. Bernard opined,

> While the fall at work certainly was the proverbial straw that broke the camel's back, it is certainly evident radiographically that his avascular necrosis was long standing and would represent greater than 51% of the need for the hip replacement. I do think there were active interval changes prior to the fall and post-fall, including fractured osteophytes. This however is the natural course of pre-collapse to post-collapse avascular necrosis . . . I do agree that radiographically he was a candidate for this hip replacement prior to [the fall at work].

3

*Id.* at 8. Miller Industries' carrier denied the compensability of Mr. Gamble's injury because of the above opinion of Dr. Bernard. (Ex. 12.)

Mr. Gamble filed a Petition for Benefit Determination on August 12. (T.R. 1 at 1.) After mediation failed to resolve the parties' differences, the mediating specialist certified the disputed issues of compensability, medical benefits and temporary disability benefits to the Court for determination. (T.R. 2 at 1.) Mr. Gamble filed his Request for Expedited Hearing on November 10. (T.R. 3 at 1.)

### Findings of Fact and Conclusions of Law

In addressing whether Mr. Gamble established that he sustained an injury arising primarily out of and in the course and scope of his employment, the Court applies the following legal principles. Mr. Gamble bears the burden of proof on all essential elements of his claim. *Scott v. Integrity Staffing Solutions,* No. 2015-01-0055, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *6 (Tenn. Workers' Comp. App. Bd. Aug. 18, 2015). However, in order to obtain relief at the Expedited Hearing stage of his claim, he need not prove every element by a preponderance of the evidence. *McCord v. Advantage Human Resourcing,* No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Rather, he must come forward with sufficient evidence from which the Court can determine he is likely to prevail at trial in establishing his injury is work-related and he is entitled to the relief he requests. *Id.*

The Court's determination here begins with analysis of the pertinent definitions established by the Workers' Compensation Law. Tennessee Code Annotated section 50-6-102(14)(A) (2016) defines a compensable injury as one resulting from a "specific incident, or set of incidents, arising primarily out of and in the course and scope of employment." This provision also addresses the compensability of an aggravation of a preexisting condition, stating that a compensable injury "shall not include the aggravation of a preexisting disease, condition or ailment unless it can be shown to a reasonable degree of medical certainty *that the aggravation* arose primarily out of and in the course and scope of employment." (Emphasis added.)

Section 50-6-102(14)(B) expands on the above definitions by providing that an injury arises primarily out of and in the course and scope of employment when the employee shows that the employment "contributed more than fifty percent in causing the injury, considering all causes." The same standard applies to the establishment of the causation of a "need for medical treatment." *See* Tenn. Code Ann. § 50-6-102(14)(C). Mr. Gamble must establish the work-relatedness of his claim to a reasonable degree of medical certainty, meaning he must come forward with expert medical opinion establishing a causal link between the alleged injury, or need for medical treatment, and the employee's employment. *See* Tenn. Code Ann. § 50-6-102(14)(C). A medical expert must state his or her opinion on causation under a "more likely than not" standard,

4

without resorting to speculation or mere possibility. *See* Tenn. Code Ann. § 50-6-102(14)(D).

In its determination here, the Court finds instruction in three decisions of the Workers' Compensation Appeals Board affirming awards of medical benefits in aggravation of preexisting condition cases. In *Miller v. Lowe's Home Centers, Inc.,* No. 2015-05-0158, 2015 TN Wrk. Comp. App. Bd. LEXIS 40. (Tenn. Workers' Comp. App. Bd. Oct. 21, 2015), the employee fell at work injuring his hip. Radiological testing indicated that severe preexisting arthritic changes existed in the hip before the fall at work occurred. The employer denied hip replacement surgery prescribed by the treating physician on the ground it was not liable for the preexisting arthritis in the hip. The trial court found the employee's fall at work aggravated the arthritic condition in his hip and ordered the employer to pay for the prescribed surgery. The Appeals Board affirmed, holding that the treating physician testified the fall at work caused a "chronic exacerbation" of the arthritis in the employee's hip and hastened the need for surgery. *Miller, supra,* at *19.

In *Sanker v. Nacarato Trucks, Inc.,* No. 2016-06-0101, 2016 TN Wrk. Comp. App. Bd. LEXIS 27 (Tenn. Workers' Comp. App. Bd. July 6, 2016), the employee suffered a compensable 2014 injury that was concluded with open future medical benefits. In September 2015, the employee sustained another work injury to the same part of the body, thus igniting a dispute as to whether his need for treatment following the latter injury related to the 2014 claim or a new 2015 injury. The same physician treated the employee for both injuries and opined that the employee had suffered a new injury in 2015, stating,

> [i]f he had developed progressively, worsening pain with time, without any new injuries, then I would say it's more than 50 percent related to the 2014 injury. But when he's doing much better and has a new trauma with sudden onset of pain, at that point, I think it's more than 50 percent related to the 9-18-2015 incident.

*Id.* at *5-6.

In *White v. Boles Trucking,* No. 2016-04-0074, 2016 TN Wrk. Comp. App. Bd. LEXIS 86, at *7-8 (Tenn. Workers' Comp. App. Bd. Nov. 14, 2016), the Appeals Board affirmed a trial court finding that an employer was liable for surgery to correct a preexisting condition. In *White,* the treating surgeon testified that, although radiological testing did not demonstrate the preexisting condition was anatomically advanced by the work injury, the employee's condition "was previously asymptomatic and the February 11 [work-related] accident 'increased the instability between L4 and L5, which [exacerbated] his symptoms.'" *Id.* at *8.

5

While the *Miller, Sanker and White* opinions involved different factual backgrounds, the Appeals Board identified the following general findings in support of its affirmations of the trial courts' awards of benefits in those claims: (1) the occurrence of a work injury; (2) the employee's preexisting condition was either completely asymptomatic, or asymptomatic for a period of time, prior to the occurrence of the work injury; (3) the employee's preexisting condition did not impair the employee's ability to perform his or her job until the work injury occurred; and (4) the submitted evidence included expert medical opinion establishing a connection between the work injury and the post-injury symptomatology that required treatment. After reviewing the evidence here in view of the above-cited authority, the Court finds that, at a hearing on the merits, Mr. Gamble will likely prevail in establishing that his fall at Miller Industries resulted in an injury to his left hip that arose primarily out of and in the course of employment.

In support of the above finding, the Court observed that Miller Industries did not challenge the fact Mr. Gamble fell when a stool on which he attempted to sit rolled out from under him. Furthermore, the submitted evidence did not indicate that Mr. Gamble had undergone treatment for left-hip pain, nor did it show that left-hip pain impaired him from performing his duties at Miller Industries, before the subject work-related fall occurred. Additionally, the Court finds that, at trial, Mr. Gamble will likely prevail in showing it is Dr. Bernard's opinion that Mr. Gamble's fall at work caused a loose body of cartilage in his left hip to break off, enter his hip joint, and cause a portion, if not all, of the pain for which he required treatment on and after the date of the subject fall.[3]

Miller Industries contends Dr. Bernard's statement that the avascular necrosis in Mr. Gamble's left hip constituted more than fifty-one percent of the anatomical basis for his recommendation of left hip replacement surgery defeats Mr. Gamble's claim for medical benefits. (Ex. 9 at 8.) It also argues Dr. Bernard's statement that, radiographically, Mr. Gamble was a candidate for left hip replacement surgery before he fell at Miller Industries negates Mr. Gamble's claim. *Id.* In view of the totality of the submitted evidence, the Court respectfully disagrees with Miller Industries' positions.

In deciding the above issue, the Court notes that Section 50-6-102(14)(A) focuses on the work-relatedness of the aggravation itself, and not the underlying condition, in defining what constitutes a covered injury in the context of an aggravation of a preexisting condition. With that definitional requirement in mind, the Court considers Dr. Bernard's opinion that preexisting conditions accounted for more than fifty-one

---

[3] In making this finding, the Court considered Dr. Bernard's discussion that Mr. Gamble's left hip may have had "interval changes . . . including fractured osteophytes" both before and after his fall at Miller Industries. (Ex. 9 at 8.) The Court also noted Dr. Bernard's statement that the "natural course" of the collapse of a hip joint due to avascular necrosis would involve interval changes both before and after the occurrence of the collapse itself. *Id.* While the above statements from Dr. Bernard establish that Mr. Gamble's left hip may have undergone anatomical changes before he fell at work, the statements also indicate the fall may have caused further anatomical changes. In fact, Dr. Bernard actually opined that Mr. Gamble's fall at Miller Industries caused the loose cartilaginous body in his left hip. *Id.* at 1.

6

percent of Dr. Bernard's recommendation of hip-replacement surgery with the fact that, prior to his fall at work, Mr. Gamble had not received treatment for, nor been impaired from working at Miller Industries by, left hip pain. In the same vein, the Court considers Dr. Bernard's statement that, radiographically, Mr. Gamble was a candidate for left hip replacement surgery before he fell at Miller Industries with the fact the submitted evidence failed to establish that any physician had recommended treatment on Mr. Gamble's left hip before he fell at Miller Industries. Furthermore, the Court observes that, after enduring left-hip pain for six months following his work-related fall, Mr. Gamble is not now a candidate for hip surgery as he was before he fell, but, according to Dr. Bernard, is currently a surgical patient.

When considered in its entirety, the Court finds that Mr. Gamble will prevail at a hearing on the merits in establishing that his present need for left hip treatment arose primarily from the fact he injured his left hip, including by the dislodgement of a body of cartilage into his left hip joint, when he fell at Miller Industries. Based on that finding, the Court holds Mr. Gamble is entitled to medical benefits provided by Dr. Bernard, the authorized treating physician, for reasonable and necessary treatment of his left hip that arises primarily out of and in the course and scope of employment. *See* Tenn. Code Ann. § 50-6-207.

Next, the Court must decide if Mr. Gamble is entitled to the recommended left hip replacement surgery under section 50-6-102(14)(C), which provides, "[a]n injury causes . . . the need for medical treatment only if it has been shown to a reasonable degree of medical certainty that it contributed more than fifty percent (50%) in causing the . . . need for medical treatment, considering all causes." In deciding this issue, the Court considers the Appeals Board's *White v. Boles* opinion, cited above, for instruction. In *White,* the employee claimed he aggravated a preexisting spinal condition at work. The employee claimed the aggravation constituted a new injury and sought the Court's order requiring the employer to authorize the fusion surgery recommended by the authorized treating physician. The employer contended the injurious event did not constitute a new injury and that the employee was limited to medical benefits under the settlement of a 2014 spinal injury. Furthermore, the employer argued that it was not liable for the recommended fusion surgery because the underlying condition, degenerative spinal spondylolisthesis, did not arise primarily out of and in the course and scope of employment.

The trial court in *White* awarded benefits and the Appeals Board affirmed, holding,

> We note Employer's argument that the radiological proof, consisting of MRI films taken before and after the February 11, 2015 accident, revealed no anatomical change in Employee's spondylolisthesis according to Dr. Shibayama. However, Dr. Shibayama also testified that "the

7

condition was exacerbated . . . to the point where treatment and now surgery is necessary." He further explained that Employee's spondylolisthesis was previously asymptomatic and the February 11 accident "increased the instability between L4 and L5, which [exacerbated] his symptoms." Although the expert medical proof is close on this issue, we conclude that the trial court did not err in finding Employee is likely to prevail in establishing a compensable aggravation at a trial on the merits.

*Id.* at *7-8.

While Dr. Bernard did opine that the preexisting avascular necrosis in Mr. Gamble's left hip accounted for more than fifty percent of the *radiographic* basis for his recommendation of hip replacement surgery, he also opined that Mr. Gamble's fall at Miller Industries caused cartilage to break off and enter the hip joint, resulting in disabling pain that was not present before the fall occurred. Dr. Bernard stated the fall at Miller Industries was the "proverbial straw that broke the camel's back" as for Mr. Gamble's need for left hip replacement surgery. In view of this evidence, the Court finds that, at a hearing on the merits, Mr. Gamble will likely prevail in establishing that his need for left hip replacement surgery arose primarily out of and in the course and scope of employment.[4]

Mr. Gamble also seeks temporary disability benefits. He came forward with no evidence establishing that he missed work due to his work injury. Such evidence is essential to a temporary disability claim and, accordingly, the Court at this time denies Mr. Gamble's claim for temporary disability benefits.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Gamble is entitled to medical benefits for treatment of the left hip and low back injuries he sustained primarily in the course and scope of his employment by Miller Industries. Miller Industries and/or its carrier shall promptly initiate this treatment by scheduling Mr. Gamble for ongoing care by Dr. Matthew Bernard.

2. Mr. Gamble's claim for temporary disability benefits is denied.

---

[4] The Court considered whether it should limit the award here to authorization for the surgery Dr. Bernard considered to remove the loose body from Mr. Gamble's left hip. In deciding against this result, the Court noted that the Appeals Board in *White* affirmed the trial court's rejection of a similar approach recommended by the employer in that claim. Also, the Court noted that Dr. Bernard made a clear decision that the hip replacement surgery best suited Mr. Gamble's need for treatment here. The Appeals Board held in *Scott v. Integrity Staffing Solutions, supra* at *8, that "Judges are not well-suited to second-guess a medical expert's treatment, recommendations, and/or diagnoses absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record." In furtherance of the above-cited principle, the Court will not deviate from Dr. Bernard's surgical recommendation.

8

3. **This matter is set for a telephonic Status Conference on February 17, 2017, at 10:00 a.m. Eastern Time. The parties shall call 855-747-1721 (toll-free) or 615-741-3061 at the scheduled time to participate in the conference. A party's failure to call in at the scheduled time will result in the Court making decisions without the absent party's participation.**

4. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 20th day of December, 2016.**

_____
**Judge Thomas Wyatt**
**Court of Workers' Compensation Claims**

Right to Appeal:

Tennessee Law allows any party who disagrees with this Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.00. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in

9

person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.

5.      The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6.      If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

# APPENDIX

<u>Exhibits:</u>

1. Affidavit of Ceasar Gamble;
2. First Report of Injury;
3. Wage Statement;
4. Agreement Between Employer/Employee Choice of Physician form;
5. Medical records of CHI Memorial Hospital;
6. Medical records of Physician's Care;
7. Medical records of Nova Medical Center/Dr. Daniel Callen;
8. Medical records of Spine Surgery Associates/Dr. Alexander Roberts;
9. Medical records of Chattanooga Orthopedic Group/Dr. Matthew Bernard;
10. Job Description;
11. Peer Review documentation; and
12. Notice of Controversy.

<u>Technical record:</u>

1. Petition for Benefit Determination;
2. Dispute Certification Notice, including documents filed after issuance;
3. Request for Expedited Hearing;
4. Employer Position Statement; and
5. Employer's Supplemental Position Statement.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 20th day of December, 2016.

| Name | Via Email or Regular Mail | Service sent to: |
|---|---|---|
| Ceasar Gamble, Self-Represented Employee | X | C/O 5131 Mimosa Circle, Chattanooga, TN 37416 |
| Eric Shen, Employer's Attorney | X | Eric.shen@LibertyMutual.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims